**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CLARK H. BROWN,<br><br>        Plaintiff,<br><br>        v.<br><br>CARLA HAYDEN,<br>     *in her capacity as Librarian of*<br>     *Congress*,<br><br>        Defendant. | Civil Action No. 18-2561 (BAH)<br><br>Chief Judge Beryl A. Howell |

**MEMORANDUM OPINION**

Plaintiff Clark Brown seeks reconsideration of this Court's November 2, 2020 Order, ECF No. 29, granting defendant Library of Congress's ("LOC") motion for summary judgment and denying plaintiff's cross-motion for partial summary judgment. *See* Pl.'s Mot. Recons. ("Pl.'s Mot."), ECF No. 32. Plaintiff filed this lawsuit against LOC, his former employer, for alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, the Congressional Accountability Act ("CAA"), 2 U.S.C. §§ 1301 *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, the Fifth Amendment to the U.S. Constitution, and LOC's internal regulations, *see* Am. Compl. ¶¶ 200–84, ECF No. 31, based on allegations that, following plaintiff's return to work after a stroke, LOC discriminated against him on the basis of disability and age, retaliated against him for filing a complaint, failed to reasonably accommodate his disability, and subjected him to both a hostile work environment and an unlawful medical examination. *See generally id.* LOC's motion for summary judgment on all of plaintiff's claims was granted, *see Brown v. Hayden*, Civil Action No. 18-2561 (BAH), 2020 WL 6392746, at *1 (D.D.C. Nov. 2, 2020), in part based on a

1

determination that, although plaintiff had filed six separate administrative complaints, he had failed to administratively exhaust several of those complaints. *See id.* at *10–13. After ten months of discovery, *see* Scheduling Orders (Mar. 21, 2019, Oct. 15, 2019, and Nov. 26, 2019) and thorough briefing on cross-motions for summary judgment, including on the issue of exhaustion, *see generally* Def.'s Mot. Summ. J., ECF No. 19; Def.'s Mem. Supp. Summ. J., ECF No. 19-1 ("Def.'s Mem. Supp. Summ. J."); Pl.'s Cross-Mot. Partial Summ. J., ECF No. 20; Pl.'s Mem. Supp. Cross-Mot. Partial Summ. J. & Opp'n Def.'s Mot. Summ. J., ECF No. 20-1; Def.'s Sealed Reply Supp. Mot. Summ. J. & Opp'n Pl.'s Cross-Mot. Partial Summ. J., ECF No. 26 ("Def.'s Reply Supp. Summ. J."); Pl.'s Reply Supp. Cross-Mot. Partial Summ. J., ECF No. 27, plaintiff now seeks to introduce new evidence that his claims were administratively exhausted and to argue that the Court committed legal error in analyzing whether his claims were exhausted. For the reasons that follow, plaintiff's motion, timely filed under Rule 59(e) of the Federal Rules of Civil Procedure, is denied.

## I.      BACKGROUND

The background underlying plaintiff's lawsuit is detailed in *Brown*, 2020 WL 6392746, at *1–7, and will not be repeated here, except as pertinent to resolution of the pending motion for reconsideration. Plaintiff's motion for reconsideration focuses on his administrative complaints and whether he exhausted his administrative remedies, and thus those complaints are the focus of this section.

### A.      Plaintiff's Relationship with Isabella Marques de Castilla and His First Two Administrative Complaints

Plaintiff was employed by LOC for sixteen years until his retirement in June 2018. *Brown*, 2020 WL 6392736, at *1. In April 2017, he suffered a stroke, and returned to work on a part-time basis in June 2017 while still dealing with the stroke's lingering effects, including

cognitive and motor-control difficulties.  *Id.* at *1–2.  Upon his return to LOC, his relationship with his supervisors, first Isabella Marques de Castilla and then Melissa Blaschke, was strained, with his supervisors of the view that plaintiff took too long to complete tasks, performed them poorly, and required excessive supervision and direction, and plaintiff believing that he was being held to unrealistic expectations that ignored the workplace difficulties created for him by his recent stroke.  *See id.* at *3–6.

On September 27, 2017, plaintiff filed an informal dispute with LOC's Office of Equal Employment Opportunity and Diversity Program ("EEO/DP") stating that he was seeking dispute resolution with his supervisor Castilla.  *See id.* at *7.  He listed several specific interactions with Castilla that led him to seek mediation, with many of the listed interactions having occurred months prior, but the most recent of which had occurred on September 22, 2017, only a few days before he filed the informal dispute.  *See id.*  On November 29, 2017, EEO/DP informed plaintiff that his informal complaint remained unresolved and that he could file a formal complaint.  *Id.*  He did so on December 6, 2017.  *Id.*

Plaintiff's December 2017 formal EEO/DP complaint alleged discrimination based on race/color, age, disability, and failure to accommodate, supported by specific allegations of misconduct by Castilla, including changing plaintiff's work assignments and work hours, setting unrealistic deadlines, denying a reassignment request, making disrespectful comments, and asking him to perform physical tasks that his doctor had recommended he not perform.  *See id.* In a letter to plaintiff, EEO/DP rejected the complaint as untimely, because it included allegations of conduct that had occurred more than 45 days preceding the filing of the complaint, in violation of LOC regulations governing discrimination complaints.  *See id.*  Specifically, EEO/DP explained to plaintiff that

> Library of Congress Regulation (LCR) 11-310, Resolving Complaints of
> Discrimination, Section 4, states a staff member, or qualified applicant, who
> believes that he/she has been, or is being, discriminated against, and who wishes
> to resolve the matter, shall notify the EEO/DP and consult with a Counselor not
> later than 45 calendar days after the date of the alleged discriminatory event.  An
> allegation of discrimination from June 27, 2017 must be filed no later than August
> 11, 2017.  For an allegation of discrimination alleging a hostile work
> environment, the most recent instance of discrimination must be within the 45 day
> timeline prescribed by the regulation.  Although you stated that the discrimination
> "still continues," you did not provide any date or alleged discriminatory event
> within the required time for filing that would allow your complaint to be accepted
> for investigation.  As you failed to file within the 45 day timeline, your complaint
> is not timely.

Def.'s Mot. Summ. J., Ex. 56, Jan. 3, 2018 Non-Acceptance of Formal Complaint of

Discrimination EEO 17-051 at 1, ECF No. 19-58.  Accordingly, EEO/DP stated, plaintiff's

"discrimination complaint will not be accepted for further processing or investigation."  *Id.*

EEO/DP went on to inform plaintiff that "[p]ursuant to LCR 11-310, Section 7.F, you have the

right to request reconsideration of the decision not to accept your complaint.  Should you decide

to do so, your appeal must be submitted in writing, to the Chief, EEO/DP, . . . not later than five

(5) workdays after receipt of this letter."  *Id.* at 2.  If he appealed the decision, "[t]he Chief, or

designee, [would] make a final written decision whether or not [plaintiff's] complaint will be

accepted for further process and will communicate that decision to [plaintiff], in writing, not later

than five (5) workdays after receipt of [plaintiff's] written appeal."  *Id.*  Plaintiff did not submit

an appeal.  *See Brown*, 2020 WL 6392746, at *7.

### B.    Plaintiff's Relationship with Melissa Blaschke and His Next Two Administrative Complaints

Meanwhile, in October 2017, Blaschke replaced Castilla as plaintiff's direct supervisor.

*See Brown*, 2020 WL 6392746, at *5.  Blaschke's working relationship with plaintiff was similar

to Castilla's, and the tension between her and plaintiff came to a head on March 14, 2018, during

a meeting between Blaschke, plaintiff, and another LOC supervisor, Karen Caldwell, which had

been convened in order to deliver to plaintiff a written policy reminder and a written policy reprimand after plaintiff allegedly violated LOC protocols in signing up for a week-long training. *See id.* at \*5–6.  According to Blaschke's and Caldwell's contemporaneous accounts of the meeting, plaintiff began interrupting Blaschke as she attempted to give him the two documents, and stood up and threw the papers onto the table.  *See id.* at \*6.  Blaschke and Caldwell both perceived plaintiff to be "aggressive" and "in an agitated state," and noted that they felt threatened by his behavior.  *Id.* (quoting Def.'s Mot. Summ. J., Ex. 86, Mar. 14, 2018 Memorandum from Karen Caldwell to Joe Cappello, ECF No. 19-88).  The day following the meeting, once Blaschke and Caldwell informed LOC of plaintiff's conduct at the meeting, plaintiff was directed to go home for the remainder of the day, and LOC convened a Threat Assessment Group meeting and thereafter informed plaintiff by letter on March 16, 2018 that he would not be permitted to return to work until he submitted medical documentation confirming that he did not present a threat to himself or others.  *See id.*  Plaintiff remained on administrative leave until March 28, 2018, when, having submitted the required medical documentation, he returned to work at LOC.  *See id.*  On May 8, 2018, LOC issued plaintiff a Notice of Proposed Adverse Action, proposing to suspend him for ten workdays as a result of his conduct at the March 14 meeting.  *Id.*  On June 15, 2018, before serving the suspension, plaintiff retired from LOC, citing the advice of his doctor and the high stress he was experiencing at work.  *See id.* at \*7.

On February 12, 2018, plaintiff had filed another informal dispute with EEO/DP, this one against Blaschke, based on allegations that Blaschke was singling plaintiff out for disadvantageous schedule changes.  *See id.*  On April 25, 2018, EEO/DP informed plaintiff that the dispute had not been resolved and that he could file a formal complaint, which he did on

April 28, 2018.  *See id.*  This formal complaint alleged discrimination based on race, sex, and disability, as well as retaliation, citing the written reprimand and policy reminder he received at the March 14 meeting and being placed on administrative leave following meeting.  *Id.*  Plaintiff informed EEO/DP, however, that he was going to pursue the complaint with the U.S. Congress Office of Compliance ("OOC"), a separate congressional entity that, beginning on March 23, 2018, shared jurisdiction with EEO/DP over LOC workplace complaints.  *See id.* at *7 & n.3. EEO/DP acknowledged that plaintiff would be pursuing the complaint with OOC and informed him that, as a result, the EEO/DP complaint would be closed.  *Id.* at *7.

### C.      Plaintiff's Final Two Administrative Complaints and the Instant Lawsuit

On June 1, 2018, plaintiff filed a Formal Request for Counselling at OOC, again alleging discrimination on the basis of race, sex, disability, and age, as well as retaliation, citing comments Blaschke made during the March 14 meeting, misinformation that she provided to LOC about his conduct at that meeting, and LOC's proposed ten-workday suspension.  *See id.* at *8.  On July 9, 2018, plaintiff requested OOC mediation for this claim, and one month later, OOC informed plaintiff that the mediation period ended and that he could file either a formal complaint with OOC or a civil lawsuit.  *Id.*  OOC also informed plaintiff that if he wished to file a lawsuit, he needed to do so between 30 and 90 days after the end of the mediation period, pursuant to the CAA.  *Id.*

On October 9, 2018, plaintiff filed a another formal complaint with OOC, alleging "Harassment (Hostile Work Environment), Constructive Discharge, Disability Discrimination (Failure to Accommodate, Failure to Engage in Interactive Process, Disparate Treatment), [and] Retaliation."  *Id.* (quoting Pl.'s Statement of Material Facts ¶ 84, ECF No. 20-1).  As the Court noted in its Memorandum Opinion explaining the reasons for granting LOC's motion for

summary judgment and denying plaintiff's cross-motion for summary judgment, as of November 2, 2020, "[n]either party ha[d] submitted any evidence relating to the outcome of this administrative complaint or whether this complaint remains pending."  *Id.*

### D.    The Instant Lawsuit and the Court's Grant of Summary Judgment to LOC

Plaintiff filed the instant lawsuit on November 6, 2018, the ninetieth day after the mediation period for his June 2018 OOC complaint.  *Id.*  Plaintiff's Amended Complaint alleged six violations of the ADA, including failure to provide reasonable accommodations, subjecting plaintiff to an unlawful medical examination, discrimination on the basis of disability, retaliation for filing complaints with EEO/DP and OOC, hostile work environment, and constructive discharge (Counts One through Six), *see* Am. Compl. ¶¶ 200–66; *see also Brown*, 2020 WL 6392746, at *8, as well as a violation of the ADEA (Count Seven), the Due Process Clause of the Fifth Amendment to the U.S. Constitution (Count Eight), and LOC's internal policies concerning discrimination charges (Count Nine), *see* Am. Compl. ¶¶ 267–84; *see also Brown*, 2020 WL 6392746, at *8.

On November 2, 2020, LOC's motion for summary judgment on all of plaintiff's claims was granted, and plaintiff's cross-motion for partial summary judgment on his unlawful medical examination claim and the subsidiary finding, relevant to his failure to accommodate, disability discrimination, and hostile work environment claims, that he was disabled due to his stroke and that LOC had notice of his disability, was denied.  *See Brown*, 2020 WL 6392746, at *17.  The Court determined that it lacked subject-matter jurisdiction over plaintiff's unlawful medical examination, hostile work environment, failure to accommodate, and constructive discharge claims because those claims had not been administratively exhausted.  *See id.* at *13.

Specifically, the Court explained that, because the CAA was amended in March 2018 to cover LOC employees, which it previously had not, "plaintiff's various administrative complaints stemming from his alleged disability are subject to two separate exhaustion regimes. Those filed before March 23, 2018 are subject to exhaustion under the ADA, whereas those filed after March 23, 2018 must comply with the exhaustion requirements of the CAA." *Id.* at *10. "[D]ifferences exist under these statutory regimes for administrative exhaustion." *Id.* ADA exhaustion "means 'fil[ing] an administrative charge with the EEOC and allow[ing] the agency time to act on the charge' before commencing litigation." *Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 526 (D.C. Cir. 2019) (alterations in original) (quoting *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995)).

In contrast, exhaustion under the CAA as it applied at the time of plaintiff's lawsuit requires compliance with "a three-step process that requires counseling and mediation before an employee may file a complaint seeking administrative or judicial relief." *Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 701 (D.C. Cir. 2009).[1]  As the Court explained, an employee must first request counseling, "not later than 180 days after the date of the alleged violation," 2 U.S.C. § 1402(a) (1995), and, second, must request mediation with OOC no more than 15 days after he receives notice that the 30-day counseling period has ended, *id.* § 1403(a). Only then, between 30 and 90 days after a covered employee has received notice that the 30-day mediation period has ended, may the employee may file either an administrative complaint with OOC or "a civil action . . . in the United States district court for the district in which the employee is employed or for the District of Columbia." *Id.* § 1404(b).

---

[1]      As the Court noted, "[a]mendments to the CAA on December 21, 2018, after the plaintiff was terminated [by LOC] and had filed this suit, altered the pre-suit administrative processes and revised" the CAA, and "[c]orrectly, neither party disputes that the pre-amendment version of the CAA applies here." *Brown*, 2020 WL 6392746, at *11 n.6.  Accordingly, citations to the CAA are to the pre-amendment version of the statute.

Critically, the Court went on to explain that, because the CAA provides that "the compliance or noncompliance with the provisions of th[e] [CAA] . . . shall not be subject to judicial review," *id.* § 1410, *except* that "[a] civil action may be commenced by a covered employee only to seek redress for a violation for which the employee has completed counseling and mediation," *id.* § 1408(a), the exhaustion requirements of the CAA, unlike ADA exhaustion, are jurisdictional.  *Brown*, 2020 WL 6392746, at *11; *see also Blackmon-Malloy*, 575 F.3d at 705 ("[C]ounseling and mediation [under the CAA are] jurisdictional requirements.").

Having described the difference between ADA exhaustion and CAA exhaustion, the Court proceeded to determine whether each of plaintiff's administrative complaints had been properly exhausted.  The Court explained that plaintiff failed to exhaust his December 2017 EEO/DP complaint because he failed to appeal EEO/DP's determination that the complaint was not timely, and he failed to exhaust his February 12, 2018 EEO/DP complaint because he voluntarily abandoned it by notifying EEO/DP that he would instead pursue a complaint with OOC.  *See id.* at *11–12.  As noted, the Court observed that the parties had provided no information about the outcome of plaintiff's October 2018 OOC complaint, and accordingly determined that plaintiff had failed to exhaust that complaint because "although [he] filed a request for counseling, he did not subsequently submit a request for mediation as required by the CAA."  *See id.* at *12 (citing 2 U.S.C. §§ 1403(a), 1408).

That left only plaintiff's June 2018 EEO complaint, which LOC conceded was administratively exhausted, to serve as a basis for his lawsuit.  *Id.*  Plaintiff's June 2018 OOC complaint, however, contained no allegations relating to his unlawful medical examination, hostile work environment, failure to accommodate, or constructive discharge claims and, as such, those claims were dismissed for failure to exhaust.  *See id.* at *12–13.  The Court proceeded to

grant LOC summary judgment on the merits of plaintiff's properly exhausted claims, namely intentional discrimination on the basis of disability and retaliation for requesting mediation, under the ADA, as well as age discrimination under the ADEA and plaintiff's claims that LOC violated the Fifth Amendment and its own internal regulations.  *See id.* at *16–17 & n.12.

### E.    Plaintiff's New Evidence Relating to His October 2018 OOC Complaint

Plaintiff now asks the Court to reconsider its grant of summary judgment to LOC, in particular seeking reconsideration of its determination that he failed to exhaust his December 2017 EEO/DP complaint and his October 2018 OOC complaint, in order to "correct a factual error and prevent manifest injustice."  Pl.'s Mot. at 1–2.  In support of his argument that he exhausted his October 2018 OOC complaint, he seeks to introduce new evidence, namely documentation showing that he did indeed "mediate the claims in his October 2018 complaint and therefore exhausted those claims."  *Id.* at 1.

Specifically, plaintiff seeks to rely on two new exhibits.  The first is OOC's January 3, 2019 notice to plaintiff that his mediation period had ended.  *See* Pl.'s Mot., Ex. A, Jan. 3, 2019 End of Mediation Notice ("End of Mediation Notice"), ECF No. 32-1.  The End of Mediation Notice indicates that "[t]he counseling period [for plaintiff's October 2018 OOC complaint] began on October 10, 2018 and ended on November 9, 2018" and that "[t]he mediation period began on November 27, 2018 and ended on December 27, 2018," and states that "the mediation period has ended . . . without a resolution of [plaintiff's] claims."  *Id.* at 1 (emphasis omitted). The notice proceeds to inform plaintiff that he could file either a formal complaint with OOC or else a civil lawsuit, *see id.*, and described the procedures for each course of action, *see id.* at 1–2.

Plaintiff's second new exhibit is an OOC mediation agreement dated December 21, 2018. *See* Pl.'s Mot., Ex. B, Dec. 21, 2018 Mediation Agreement, ECF No. 32-2.  The agreement,

which "must be signed by both parties" "[b]efore active mediation proceeds," *id.* at 1, reflects

that a mediation session was held on December 21, 2018.  Plaintiff also includes various emails

corroborating that an OOC mediation session between plaintiff and LOC was held on that date.

*See id.* at 2–3.

## II.    LEGAL STANDARD

Rule 59(e) allows a litigant to file a "motion to alter or amend a judgment," within 28

days from entry of the judgment.  FED. R. CIV. P. 59(e).  Altering or amending a judgment under

Federal Rule of Civil Procedure 59(e) "is an extraordinary remedy which should be used

sparingly," *Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9, 17 (D.C. Cir. 2015) (quoting 11

Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 2810.1 (3d ed. 2012)), as a

"limited exception to the rule that judgments are to remain final," *Leidos, Inc. v. Hellenic*

*Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018).  This Rule "gives a district court the chance 'to

rectify its own mistakes in the period immediately following' its decision."  *Banister v. Davis*,

140 S. Ct. 1698, 1703 (2020) (quoting *White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 450

(1982).  The law is well-settled that a motion for reconsideration "is discretionary and need not

be granted unless the district court finds that there is an intervening change of controlling law,

the availability of new evidence, or the need to correct a clear error or prevent manifest

injustice."  *Pigford v. Perdue*, 950 F.3d 886, 891 (D.C. Cir. 2020) (quoting *Ciralsky v. CIA*, 355

F.3d 661, 671 (D.C. Cir. 2004)); *see also Leidos, Inc.*, 881 F.3d at 217 ("Under Rule 59(e), the

court may grant a motion to amend or alter a judgment under three circumstances only: (1) if

there is an 'intervening change of controlling law'; (2) if new evidence becomes available; or (3)

if the judgment should be amended in order to 'correct a clear error or prevent manifest

injustice.'" (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam))).

Consistent with Rule 59(e)'s corrective function, the only matters subject to reconsideration are those "properly encompassed in a decision on the merits," *Banister*, 140 S. Ct. at 1703 (quoting *White*, 455 U.S. at 451), such that "courts will not address new arguments or evidence that the moving party could have raised before the decision issued," *id.*  Accordingly, a motion to reconsider "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."  *Exxon Shipping v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 Charles Wright & Arthur Miller, *Federal Practice and Procedure* § 2810.1 (2d ed. 1995)).  Whether to grant a motion for reconsideration is within the district court's discretion.  *See Leidos, Inc.*, 881 F.3d at 216.

## III.    DISCUSSION

Plaintiff contends that, in granting LOC summary judgment on all plaintiff's claims, the Court erred in analyzing whether he exhausted his December 2017 EEO/DP complaint and his October 2018 OOC complaint.  He also newly seeks to introduce evidence in support of his contention that the latter complaint was exhausted.  These arguments are addressed in turn.

### A.    Exhaustion of Plaintiff's December 2017 EEO/DP Complaint

As explained, plaintiff's December 2017 EEO/DP complaint was subject to exhaustion under the ADA.  *See Brown*, 2020 WL 6392746, at \*10–11; *see also supra* Part I.D.  Plaintiff objects to the Court's holding "that [his] claims, which were included in his December 2017 internal complaint, were not exhausted because he did not internally appeal the LOC's dismissal of his claims as allegedly untimely," and argues that "[t]his ruling was a clear error because the LOC's decision was *permissive* under their own policy."  Pl.'s Mot. at 5 (emphasis in original).  In other words, plaintiff suggests that because the internal appeal of EEO/DP's determination that his December 2017 complaint was untimely, which he did not take, was permissive rather

12

than mandatory, his failure to appeal does not mean that he did not exhaust his December 2017 EEO/DP complaint.

This argument misses the point, as whether the internal appeal was mandatory or permissive does not affect whether the complaint was timely filed.  Exhaustion, which in the ADA context means "means 'fil[ing] an administrative charge . . . and allow[ing] the agency time to act on the charge' before commencing litigation," *Haynes*, 924 F.3d at 526 (alterations in original) (quoting *Park*, 71 F.3d at 907), "is necessary to *give the agency 'an opportunity to resolve [the] claim administratively* before [the employee] file[s] her complaint in district court." *Id.* (emphasis added) (alterations in original) (quoting *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010)); *see also, e.g.*, *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985) ("Exhaustion is required in order to give federal agencies an opportunity to handle matters internally whenever possible and to ensure that the federal courts are burdened only when reasonably necessary."). Administrative exhaustion "is 'part and parcel of the congressional design to vest in the federal agencies and officials engaged in hiring and promoting personnel primary responsibility for maintaining nondiscrimination in employment,'" *Barkley v. U.S. Marshals Serv. ex rel. Hylton*, 766 F.3d 25, 34 (D.C. Cir. 2014) (quoting *Kizas v. Webster*, 707 F.2d 524, 543–44 (D.C. Cir. 1983)), and both "manifests a 'carefully structured scheme for resolving charges of discrimination within federal agencies' when possible," *id.* (quoting *Kizas*, 707 F.2d at 546), and reflects Congress's intent "to give each agency 'the opportunity as well as the responsibility to right any wrong that it might have done," *Marsh*, 777 F.2d at 14 (quoting *President v. Vance*, 627 F.2d 353, 362 (D.C. Cir. 1980)).

By failing to appeal EEO/DP's determination that his December 2017 complaint was untimely, however, plaintiff deprived LOC of an opportunity to resolve his claims in the first

13

instance, contrary to the principle underpinning the ADA's exhaustion requirement.  In arguing otherwise, plaintiff would ask the Court to resolve whether his complaint was timely under LOC's own internal rules governing processing of discrimination complaints, and then, potentially, to pass on the merits of his claims in the first instance, without the benefit of substantive resolution by LOC.  Yet those are precisely the determinations that the exhaustion requirement ensures will be made by the employer before a lawsuit may be filed.  Whether cast as failure to appeal EEO/DP's dismissal of his complaint or failure to timely file the December 2017 EEO/DP complaint in the first place, the fact remains that plaintiff did not, in EEO/DP's view, timely file the complaint, did not appeal the determination that the complaint was untimely, and therefore did not give LOC the opportunity to resolve his claims before bringing the instant lawsuit.  His argument that this complaint was properly exhausted is therefore unavailing.

### B.     Exhaustion of Plaintiff's October 2018 OOC Complaint

Unlike plaintiff's December 2017 EEO/DP complaint, his 2018 OOC complaint was subject to exhaustion under the CAA.  *See Brown*, 2020 WL 6392746, at *10, 12.  He contends that he properly exhausted his October 2018 OOC complaint, relying on two subsidiary arguments: first, that the Court should consider newly introduced evidence that he completed counseling and mediation for that complaint, as required by the CAA; and second, that the Court erred in holding that he, rather than LOC, had the burden of proof as to whether the complaint was exhausted.  Both arguments fail, and, in any event, even if plaintiff were correct on both counts, his lawsuit, if based on his October 2018 OOC complaint, was not timely filed.

14

1.    ***Plaintiff's New Evidence that He Completed Mediation for His October 2018 Complaint***

Plaintiff seeks to introduce two new documents to demonstrate that he mediated his October 2018 claim and, consequently, properly exhausted that claim.  *See* 2 U.S.C. § 1408(a) (providing federal courts with jurisdiction over a civil action "commenced by a covered employee . . . to seek redress for a violation for which the employee has completed counseling and mediation").  As explained, a motion for reconsideration pursuant to Rule 59(e) may be granted "if new evidence becomes available," *Leidos, Inc.*, 881 F.3d at 217, or "to 'correct a clear error or prevent manifest injustice,'" *id.* (quoting *Firestone*, 76 F.3d at 1208).  Neither rationale applies here to warrant introduction of plaintiff's new evidence.

First, it is too late in the life of the instant lawsuit for plaintiff to introduce this evidence.  Although the evidence may be newly available to the Court, it is *not* newly available to plaintiff, as the documentation itself indicates that he possessed it as of January 2019, at the latest.  Plaintiff therefore had a clear opportunity to produce this evidence in response to LOC's discovery requests, in particular in response to LOC's request for "[a]ll documents which . . . support . . . any answers to . . . [LOC's] interrogatories," Def.'s Opp'n Pl.'s Mot. Recons., Attach. A, Defendant's First Set of Interrogatories and Requests for Production of Documents to Plaintiff at 11, ECF No. 33-1, which included "whether Plaintiff . . . sought EEO counseling or made a formal or informal complaint of any sort with respect to the act and, if so, when Plaintiff sought counseling or made a complaint, whether any complaint was investigated or pursued in an administrative or court proceeding, and the final disposition or current status of

any complaint," *id.* at 7.  Plaintiff acknowledges that he did not produce this documentation in response to this interrogatory and request for document production.[2]

More important than this discovery oversight, plaintiff failed to bring this evidence to the Court's attention in briefing on LOC's Motion for Summary Judgment and his own Cross-Motion for Summary Judgment.  He was obviously on notice that this evidence was relevant to disposition of those cross-motions, as LOC argued at some length that plaintiff had failed to administratively exhaust his claims, *see* Def.'s Mem. Supp. Summ. J. at 9–13; Def.'s Reply Supp. Summ. J. at 10–15 and, more specifically, that plaintiff had not demonstrated exhaustion of his October 2018 OOC complaint because there was no evidence that he had completed counseling and mediation for that complaint, *see* Def.'s Reply Supp. Summ. J. at 13–15.[3]  If plaintiff was to that point unaware of the importance of demonstrating that he had administratively exhausted his October 2018 complaint, this defense argument should have

---

[2]        Plaintiff argues, however, that "neither party provided the Court with evidence regarding the status of the outcome of Plaintiff's October 2018 complaint," even though "*both* parties had these documents in their possession and *both* parties neglected to produce them in response to discovery requests on the same subject."  Pl.'s Reply Supp. Mot. Recons. at 2, ECF No. 35 (emphasis in original).  LOC was directed to submit an explanation of "whether defendant has had in its possession the End of Mediation Notice . . . and . . . if so, why it did not bring [that] document[] to the Court's attention when it moved for summary judgment."  Min Order (Jan. 7, 2021).  In response, LOC stated that it had "made a good faith effort to locate all records related to Plaintiff's administrative claims but did not locate or was unable to obtain copies" of the End of Mediation Notice and therefore "does not believe that it was in possession of the End of Mediation Notice."  Def.'s Statement at 1–2, ECF No. 33.  Plaintiff then submitted, unprompted and without leave of the Court, a response to LOC's statement, arguing that "even if the [End of Mediation Notice] could not be located, Defendant knew that both parties had participated in the December 2018 mediation," Pl.'s Resp. Def.'s Statement at 1, ECF No. 37, and that the specific steps LOC took to locate the notice were inadequate, *see id.* at 1–2.  LOC then sought leave to file a reply to the plaintiff's unsolicited response, *see* Def.'s Mot. for Leave to File Reply, ECF No. 38, which motion was denied, *see* Minute Order (Jan. 27, 2021), thereby cutting short the parties' largely unproductive squabble over who possessed this notice and when.  As explained below, plaintiff bore the burden to demonstrate that he had exhausted his October 2018 OOC complaint to establish federal court jurisdiction over his lawsuit and thus he bore the burden to produce the End of Mediation Notice, if not to LOC during discovery then at the very least to the Court in briefing the parties' cross-motions for summary judgment.  Having failed to do so, whether LOC was also in possession of the notice is beside the point.

[3]        LOC argued that "[a]s a threshold matter, Plaintiff made no allegations in his civil complaint regarding the October 9, 2018 Formal Request for Counseling that he made with OOC," and, further, "he has not demonstrated that he exhausted remedies with respect to the October 9, 2018 [OOC] complaint."  Def.'s Reply Supp. Mot. Summ. J. at 14.  Noting that "the CAA is strict with respect to exhaustion of remedies and failure to exhaust is a jurisdictional bar," LOC contended that plaintiff therefore could not rely on his October 2018 complaint to demonstrate that he had properly exhausted his claims.  *Id.*

signaled to him the importance of the evidence that he now seeks to introduce.  It is simply inexplicable why plaintiff failed to do so until now, especially in light of the parties' lengthy discovery and extensive briefing on their cross-motions for summary judgment.

Second, for the same reason, plaintiff has not shown that reconsideration is appropriate in order "to 'correct a clear error or prevent manifest injustice,'" *Leidos, Inc.*, 881 F.3d at 217 (quoting *Firestone*, 76 F.3d at 1208).  Manifest injustice "does not exist where . . . a party could have easily avoided the outcome, but instead elected not to act until after a final order had been entered." *Ciralsky*, 355 F.3d at 665 (quoting Mem. Op. & Order at 4, *Ciralsky v. CIA*, No. 1:00-cv-01709-JDS, ECF No. 34.).  That is plainly the case here because, as explained, plaintiff had ample opportunity to introduce the evidence he now seeks to admit as well as notice that it could be important to the disposition of the parties' cross-motions for summary judgment. Moreover, no manifest injustice would result because, as explained below, considering plaintiff's evidence that he exhausted his October 2018 OOC complaint would not affect the Court's determination that that complaint cannot form a jurisdictional basis for the instant lawsuit.  As such, no manifest injustice would result from preventing plaintiff from relying on his documentation demonstrating that he exhausted his October 2018 OOC complaint in requesting reconsideration.

In sum, then, the evidence on which plaintiff attempts to rely is not new within the meaning of Federal Rule of Civil Procedure 59(e) and its consideration is not necessary to prevent manifest injustice, and therefore does warrant reconsideration of the prior grant of summary judgment for LOC.

2. *Exhaustion Under the CAA Is a Jurisdictional Requirement on Which Plaintiff Bears the Burden of Proof*

Relatedly, plaintiff contends the Court erred in ruling that he bore the burden of proof on the question of whether his October 2018 OOC complaint had been administratively exhausted. In addition, he argues that because "LOC failed to present any facts at summary judgment concerning the status of his October 2018 complaint," Pl.'s Mot. at 4, his motion for reconsideration should be granted and "the Court should reach a decision on the merits of the substance of Plaintiff's claims," *id.* The critical point that this argument misses, however, is that exhaustion under the CAA, unlike exhaustion under the ADA, *see Marsh*, 777 F.2d at 14, is a jurisdictional requirement. *Blackmon-Malloy*, 575 F.3d at 705 ("[C]ounseling and mediation are jurisdictional requirements."). "[B]ecause the 'requirement that the aggrieved employee first seek an administrative resolution' before the employing government agency constitutes a precondition to bringing 'suit against the sovereign,' it, like any condition on the waiver of sovereign immunity, commands strict adherence." *Barkley*, 766 F.3d at 34 (quoting *McIntosh v. Weinberger*, 810 F.2d 1411, 1424–25 (8th Cir. 1987), *vacated on other grounds and remanded sub nom. Turner v. McIntosh*, 487 U.S. 1212 (1988)).

As explained, in order to administratively exhaust a claim under the CAA, a plaintiff must first request counseling, *see* 2 U.S.C. § 1402, and then, following the 30-day counseling period, must request mediation with OOC, *see id.* § 1403. Only after doing so may a plaintiff file a civil lawsuit or, alternatively, a formal complaint with OOC. *Id.* § 1404(b). Crucially, the CAA provides that "[a] civil action may be commenced by a covered employee only to seek redress for a violation for which the employee has completed counseling and mediation," *id.* § 1408(a), and that federal district courts have jurisdiction over such a civil action only when the plaintiff's claims have been properly exhausted, *see id.* §§ 1408, 1410. Thus, because

exhaustion under the CAA was a precondition for the court's subject matter jurisdiction over plaintiff's lawsuit, and because "the burden of establishing" subject matter jurisdiction "rests upon the party asserting jurisdiction," *Keepseagle v. Vilsack*, 815 F.3d 28, 32 (D.C. Cir. 2016) (quoting *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)), plaintiff bore the burden to demonstrate that he had properly exhausted his October 2018 OOC complaint pursuant to the CAA.[4]

Plaintiff argues, to the contrary, that "the failure to properly exhaust administrative remedies is an affirmative defense and the defendant bears the burden of proof." Pl.'s Mot. at 4 (quoting *Proctor v. Dist. of Columbia*, 74 F. Supp. 3d 436, 455–56 (D.D.C. 2014)). This argument is insufficiently sensitive both to the fact that CAA exhaustion is a jurisdictional requirement and to the procedural posture of the instant case. The cases that plaintiff cites for the proposition that it was LOC's burden to prove that plaintiff had *not* exhausted the 2018 OOC complaint rather than plaintiff's burden to prove that he *had*, stand instead for the proposition that, at the motion to dismiss stage, non-jurisdictional exhaustion requirements, such as those imposed in an ADA lawsuit, are an affirmative defense for which a defendant bears the burden of proof. *See, e.g.*, *Proctor*, 74 F. Supp. 3d at 455 (stating, in ruling on a motion to dismiss, that "*[f]or Title VII claims*, the failure to properly exhaust administrative remedies is an affirmative defense and the defendant bears the burden of proof" (emphasis added)).

---

[4]    Plaintiff argues that the Court's reliance, in granting LOC summary judgment, on *Keepseagle*, which was cited for the black letter proposition that "at the summary judgment stage, plaintiff bears the burden of demonstrating that the court has jurisdiction," *Brown*, 2020 WL 6392746, at *12, was "misplaced," Pl.'s Mot. at 4, because *Keepseagle* is factually distinguishable. Specifically, according to plaintiff, *Keepseagle* concerned whether a court had ancillary jurisdiction to enforce a consent decree and had nothing to do with exhaustion of administrative claims in the employment discrimination context. *Id.* Plaintiff makes no effort to explain why this factual distinction makes *Keepseagle* inappropriate authority for the uncontroversial proposition that plaintiff bears the burden of demonstrating federal court jurisdiction, and, unsurprisingly, cites no case for the contrary proposition.

Plaintiff also cites two cases involving employment discrimination claims against LOC in which other Judges in this District treated exhaustion as an affirmative defense on which defendant bore the burden of proof.  Although closer to the mark, these cases nevertheless do not help plaintiff here, because they were resolved on motions to dismiss and involved lawsuits brought not under the CAA but instead under statutes for which exhaustion is not a jurisdictional requirement.  In *Terveer v. Billington*, 34 F. Supp. 3d 100 (D.D.C. 2014) (cited in Pl.'s Mot. at 4), the Court noted, in a lawsuit against LOC, that "[f]ailure to exhaust is an affirmative defense and defendants bear the burden of pleading and proving it."  *Id.* at 113–14.  Yet the Court in *Terveer* was ruling on defendant's motion to dismiss, not a motion for summary judgment, *see id.* at 110, and, more importantly, was considering a lawsuit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, for which, unlike in CAA lawsuits, exhaustion is not a jurisdictional requirement.  *See Terveer*, 34 F. Supp. 3d at 100.  Similarly, in *Sierra v. Hayden*, 254 F. Supp. 3d 230 (D.D.C. 2017) (cited in Pl.'s Mot. at 4), the Court, in considering LOC's motion to dismiss plaintiff's Title VII lawsuit, *see id.* at 236, stated that "[f]ailure to exhaust administrative remedies is an affirmative defense," *id.*  Thus, because *Terveer* and *Sierra* were resolved at the motion to dismiss stage, and because they involved lawsuits based on an entirely different statute, for which administrative exhaustion is not a jurisdictional requirement, they do not support plaintiff's argument that, at the summary judgment stage of the instant lawsuit, defendant had the burden of proving plaintiff failed to exhaust his CAA claims.

### 3.    *Plaintiff's Exhaustion of His October 2018 OOC Complaint Would Be Insufficient to Confer Federal Court Jurisdiction over the Instant Lawsuit*

Finally, even considering the evidence plaintiff now seeks to introduce concerning his exhaustion of his October 2018 OOC complaint, that complaint does not provide a jurisdictional basis for the instant lawsuit.  The CAA provides that "[n]ot later than 90 days, but not sooner

than 30 days, after the end of the period of mediation, a covered employee who initially requested counseling and mediation . . .may elect to . . . file a civil action" in federal district court.  2 U.S.C. § 1404(b)(2).  The mediation period for plaintiff's October 2018 OOC complaint ended on December 27, 2018, *see* End of Mediation Notice at 1, meaning that he needed to file the instant lawsuit between January 26, 2019 and March 27, 2019, yet he did so on November 6, 2018, *see* Complaint, ECF No. 1, more than two months before the earliest date permitted and roughly six weeks before the mediation session was even conducted.  Thus, plaintiff brought the instant lawsuit well outside the time period in which the CAA permitted him to do so, at least if he wished to base the lawsuit on the claims of the October 2018 OOC complaint.[5]  Accordingly, plaintiff's evidence that he exhausted his October 2018 OOC complaint would not affect the Court's earlier determination the claims of that complaint may not form the basis of the instant lawsuit, *see Brown*, 2020 WL 6392746, at *12–13.

## IV.    CONCLUSION

For the foregoing reasons, plaintiff has failed to demonstrate clear legal error with respect to the Court's earlier determination that he did not exhaust his December 2017 EEO/DP complaint and his October 2018 OOC complaint, and he has likewise failed to show that newly available evidence or the interest in avoiding manifest injustice requires reconsideration of the grant of summary judgment to LOC.  Rather, plaintiff plainly seeks to "relitigate old matters" and "raise arguments [and] present evidence that could have been raised prior to the entry of judgment," which is not permitted under Rule 59(e).  *Exxon Shipping*, 554 U.S. at 486 n.5 (quoting 11 Wright & Miller, *Federal Practice and Procedure* § 2810.1 (2d ed. 1995)).

---

[5]      As the Court has previously noted, plaintiff's lawsuit was timely to the extent it was based on his *June* 2018 OOC complaint, as the lawsuit was filed on the ninetieth day following the mediation period associated with that complaint.  *See Brown*, 2020 WL 6392746, at *8.

Accordingly, plaintiff's Motion for Reconsideration is denied. An Order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: February 27, 2021

_____
BERYL A. HOWELL
Chief Judge